[No. 24301. Department Two. March 24, 1933.]

MAXINE MURRAY, *on Her Own Behalf and as Guardian ad Litem of* MAXINE LOIS MURRAY, *a Minor, Appellant,* v. JOE GERRICK & COMPANY *et al., Respondents.*[1]

*Wm. Martin,* for appellant.

*Stephen V. Carey* and *Henry T. Ivers,* for respondents Gerrick & Company *et al.*

[1]Reported in 20 P. (2d) 591.

*J. Speed Smith* and *Henry Elliott, Jr.*, for respondents Industrial Brown Hoist Corporation *et al.*

MAIN, J.—This action was brought to recover damages for wrongful death. To the complaint, a demurrer was interposed and sustained. An amended complaint was filed, and a demurrer to that was likewise interposed and sustained. The plaintiff elected to stand upon the amended complaint and refused to plead further. Judgment was entered dismissing the action, from which she appeals.

The facts, as stated in the amended complaint, so far as they are necessary to present the questions here for determination, may be summarized as follows: On or about October 1, 1931, the respondent R. W. Kaltenbach Corporation entered into a contract with the United States government for the construction of a twenty-ton traveling steel tower crane at the Puget Sound navy yard at Bremerton, this state. The Kaltenbach corporation contracted with the Industrial Brown Hoist Corporation to furnish the work, labor and materials used in the construction of the crane. Louis Henry Murray was employed to work upon, and in the construction of, the crane as a structural steel worker.

On or about June 17, 1932, Murray entered into the employment as such steel worker at a wage of $1.10 per hour, the time to start when he left Seattle, where the contract of employment was made; and the time was to continue until he returned there. Murray began the work for which he was employed, and while so engaged, on June 21, 1932, he fell from the steel crane a distance of about twenty-five feet, and sustained injuries from which he died within a day or two thereafter, leaving the appellant Maxine Murray, his widow, and Maxine Lois Murray, his only child, a minor three years of age, surviving.

Negligence is charged in a number of particulars, and it is further alleged that the work in which Murray was engaged was extrahazardous. The employers of Murray had not paid to the state director of labor and industries the premium upon its estimated payroll. By the allegations of the amended complaint, it is sought to state a cause of action under the industrial insurance law of this state where the employer has not given notice to the department of labor and industries and paid the premiums upon his estimated payroll.

The industrial insurance act of this state (Chapter 74, Laws of 1911, p. 345, Rem. Rev. Stat., § 7673) was passed a number of years subsequent to the time this state, by legislative enactment, gave its consent to the acquisition of the Puget Sound navy yard by the Federal government and ceded exclusive jurisdiction thereto.

The first question to be determined is whether the industrial insurance act extends over the navy yard, which is subject to the jurisdiction of the Federal government.

In *State ex rel. Grays Harbor Construction Co. v. Department of Labor & Industries,* 167 Wash. 507, 10 P. (2d) 213, it was held that exclusive Federal jurisdiction over Rainier national park having been acquired through consent of the state subsequent to the passage of the state industrial insurance act, which was in force within the boundaries of the park at the time jurisdiction was ceded, the act remained in force as to private rights within the park until such time as Congress passed an act which superseded it. In the course of the opinion, it was said:

"Prior to the time that the governor of this state was so notified, and in the year 1911, the workmen's compensation act was passed. At that time, the cession of the jurisdiction over the park area to the Federal

government had not become effective, and did not become effective until approximately five years later. The Federal jurisdiction over the park area not having become effective when the workmen's compensation act was passed, that act was in force and operative within the boundaries of the park. The workmen's compensation act having been passed before the cession of the jurisdiction over the park area became effective, it remained in force in the ceded territory until displaced by Congress. [Citing authorities.]"

From the holding in that case, it necessarily follows that, the jurisdiction of the Federal government over the navy yard having become effective by consent of the state prior to the passage of the industrial insurance act, that act would not extend to the navy yard unless the Federal Congress should pass an act which would so extend it; and it is contended that this is what Congress has done.

In 1928, Congress passed an act (45 Stat. 54) the title of which was as follows:

"An Act concerning actions on account of death or personal injury within places under the exclusive jurisdiction of the United States."

In the body of the act, it was provided that, in the case of the death of any person by the neglect or wrongful act of another within a national park or other place subject to the jurisdiction of the United States, within the exterior boundaries of any state,

". . . such right of action shall exist as though the place were under the jurisdiction of the State within whose exterior boundaries such place may be; and in any action brought to recover on account of injuries sustained in any such place the rights of the parties shall be governed by the laws of the State within the exterior boundaries of which it may be." Title 16, U. S. C. A., § 457.

It will be observed that, by this act, in the body thereof, it says "such right of action," which means

the actions mentioned in the title concerning death or injury within places under the exclusive jurisdiction of the United States which are within the exterior boundaries of any state.

Section 1 of the industrial insurance act, as passed in 1911, after making certain recitals, provides:

"The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this act provided." Rem. Rev. Stat., § 7673.

Here is a provision which expressly abolishes all civil actions and civil causes of action for personal injuries in extrahazardous work, except as provided therein. There is nothing in the language of the Federal act which would indicate an intention on the part of Congress to extend the industrial insurance act over the navy yard, which is subject to the exclusive jurisdiction of the United States and within the exterior boundaries of this state. Had such been the intention, Congress, undoubtedly, would have plainly so indicated. The case of *International Stevedoring Co. v. Haverty,* 272 U. S. 50, would not support a construction of the act of Congress here involved which would extend the industrial insurance act over the navy yard. In that case, the court construed the Federal marine act of June 5, 1920, which used the word "seaman," to include "stevedores," because they were engaged in the same marine duties.

As already pointed out, the industrial insurance act has taken away all right of action except that therein provided for, and the Federal act refers to rights of action. It is true that the industrial insurance act contains a provision that, if the employer does not pay into the industrial insurance fund, and an injury occurs to a workman while the employer is so in default, the action may be brought by the injured employee against the employer, and the common law defenses shall not be available. If it should be held that, under this provision of the act, an action could be maintained for an injury occurring in the navy yard, which is subject to the exclusive jurisdiction of the United States, then we would have a situation where a part of the industrial insurance act would extend to the navy yard and a part would not.

There is no question but that an action may be maintained under the law as it existed in this state at the time the Federal government acquired jurisdiction over the navy yard, since Congress, so far as we are informed, has passed no act which has displaced that law in the ceded territory. In neither of the cases of *Hilding v. Department of Labor and Industries,* 162 Wash. 168, 298 Pac. 321, and *Nickell v. Department of Labor and Industries,* 164 Wash. 589, 3 P. (2d) 1005, was the question here presented considered or decided.

We are of the view that the amended complaint did not state a cause of action under the industrial insurance law. Whether it stated a cause of action under the law at the time jurisdiction over the navy yard was ceded to the United States, it is not necessary here to determine.

█ The next question is whether the action was brought in the name of the proper party. As already appears, it was brought by the widow in her individual capacity and as guardian *ad litem* for the minor child.

It was not brought as administratrix of the estate of the deceased or in a representative capacity.

In chapter 123, Laws of 1917, p. 495, § 1, Rem. Rev. Stat., § 183, it is provided that, when the death of a person is caused by the wrongful act, neglect or default of another, "his personal representative may maintain an action for damages against the person causing the death; . . ." Construing this statute in *Broughton v. Oregon-Washington Railroad and Navigation Co.,* 137 Wash. 135, 241 Pac. 963, it was held that actions for damages for wrongful death must be brought by the personal representative of the deceased. It was there said:

"If it be assumed that the action was brought under state statutes, we are of the opinion that the court's decision was right upon the ground of the incapacity of appellants to bring the action. Section 183, Rem. Comp. Stat., provides that all actions for damages against a person causing the death of another shall be brought by the personal representative of the deceased. We have had occasion to construe this statute on many occasions to this effect. *Machek v. Seattle,* 118 Wash. 42, 203 Pac. 25; *Howe v. Whitman County,* 120 Wash. 247, 206 Pac. 968; *Castner v. Tacoma Gas & Fuel Co.,* 123 Wash. 236, 212 Pac. 283."

Cases holding to the effect that the objection that the action is not brought in the name of the proper party must be timely made are of no controlling importance here, because in this case the respondents raised the question upon their first appearance and continued to insist upon it. Attention is called to Rule of Practice II, Rem. Rev. Stat., § 308-2; but there is nothing in that rule which would sustain the right to maintain the action by a person other than the representative of the deceased.

The judgment will be affirmed.

BEALS, C. J., TOLMAN, BLAKE, and STEINERT, JJ., concur.