## JEWELL v. CLEVELAND WRECKING CO. et al.

### No. 9943.

District Court, W. D. Missouri, W. D.
Nov. 2, 1938.

Clif Langsdale and Roy W. Rucker, both of Kansas City, Mo., for plaintiff.

Guy Green, Jr., of Cowgill & Popham's law firm, of Kansas City, Mo., for defendants.

REEVES, District Judge.

While there is a diversity of citizenship in this case, the amount in controversy is not within the jurisdiction of the court. The parties understand this, but the case was removed solely upon the ground that the cause of action arose on property owned by the United States and over which its jurisdiction had been extended by law.

It appears from the pleadings that the plaintiff claims he was injured on the 14th of March, 1938 while engaged as an employee of the defendant in wrecking or razing the old Federal Postoffice Building at 9th and Grand Avenue in Kansas City, Missouri.

The State of Missouri by statute (Section 11072 and 11073, R.S.Mo.1929, Mo.St. Ann. §§ 11072, 11073, p. 4857), consented to the acquisition of property by the United

States for all of the purposes mentioned in Clause 17, Section 8, Article I of the Constitution of the United States, U.S.C. A., as follows: "* * * and to exercise like Authority over all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, * * * and other needful Buildings."

And it was specifically provided that: "The jurisdiction of the state of Missouri in and over all such land purchased or acquired * * * is hereby granted and ceded to the United States", etc.

There was a reservation to the state for "full authority to serve and execute all process, civil and criminal, issued under the authority of the state within such lands or the buildings thereon."

It is the contention of the defendant that by reason of this grant and its acceptance by the United States the case not only falls within the rule of a federal question, but that exclusive jurisdiction is in the United States.

■ 1. It must be understood at the outset that even the presence of a federal question does not warrant removal except there be present the requisite amount in controversy. Unless, therefore, the national government has sole and exclusive jurisdiction, the case should be remanded.

2. In examining the authorities, without exception, the courts refer to the case of Chicago R. I. & Pacific R. Co. v. McGlinn, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270, as fundamental and basic.

That case involved the precise question raised here. The legislature of Kansas ceded to the national government specified territory for a military reservation at Fort Leavenworth. It was enacted by the state of Kansas: "*That exclusive jurisdiction be,* and the same is hereby, ceded to the United States over and within all the territory owned by the United States, and included within the limits of the United States military reservation, known as the 'Fort Leavenworth Reservation.'"

No stronger language could have been or was employed in the cession of jurisdiction to the United States in the case of the postoffice site in question. The legislature of Kansas had previously enacted a law relating to the killing or the wounding of livestock by railroads. The plaintiff in error, Railroad Company, had violated, as it was alleged, said statute within the military reservation. A suit was filed in a *state court* to recover the damages provided in the statute. It was contended in the state court, and finally on writ of error in the Supreme Court, that the law of Kansas was inoperative because all jurisdiction over the reservation was ceded to the United States and there was therefore no organized government or municipality within the limits of said territory. The Supreme Court, 114 U.S. loc. cit. 547, 5 S.Ct. loc. cit. 1007, 29 L.Ed. 270, said:

"The *government* of the state of Kansas extended over the reservation, and its legislation was operative therein, *except so far as the use of the land as an instrumentality of the general government may have excepted it from such legislation. In other respects, the law of the state prevailed.*"

Previously the court had said that the laws of the state over ceded property remained in force until superseded "by direct action of the new government."

Emphasis is placed in the above excerpt on the use of the word *"government"*. The Supreme Court specifically said that the *government* of Kansas, and not alone the laws of Kansas, extended over the reservation. The court put a limitation upon the government of the State of Kansas so that it could not become operative so as to control in any way whatever the use of the land as a governmental agency.

■ As a very practical proposition, the national government, in acquiring postoffice sites for its needs, does not undertake to extirpate the territory thus acquired and set it entirely apart as free in every respect from the dominion and control of the local sovereignty. All it does, is to proclaim its superior jurisdiction so as to give it entire freedom in using the property as an instrumentality for its operations. The national government does not undertake to interfere, supervise or control the rights of individuals arising upon the property. It has provided no code of laws for enforcing such rights. In the case of the Chicago, R. I. & P. Railway Company v. McGlinn, supra, it is to be noted that the case was tried in a *state court of Kansas.* The Railway Company did not attempt to remove the case because the amount in controversy was below the jurisdiction of the federal court. On writ of error it carried the case to the Supreme Court of the United States where the judgment of the state court was affirmed. By such affirmance, the Supreme Court acknowledged

the jurisdiction of the state court. In recognizing such jurisdiction it quite effectively held that the government of the state of Kansas did extend over national territory and was operative thereon.

It is the contention in this case that the federal court has sole and exclusive jurisdiction over a controversy which does not have the requisite amount in controversy otherwise to confer jurisdiction.

2. My attention has been called to several cases which the defendant urges as controlling. In Danielson v. Donmopray et al., D.C., 57 F.2d 565, Judge Kennedy of the District of Wyoming, declined to remand a case because the amount in controversy was within the jurisdiction of the federal court and there was a diversity of citizenship. On the authority of the Fort Leavenworth case, 114 U.S. 542, 5 S.Ct. 1005, 29 L.Ed. 270, supra, he upheld the jurisdiction of the state court and his own jurisdiction to pass on the right of removal.

 In the instant case, if the removing defendant is correct in its position, then the state court acquired no jurisdiction whatever, and of course the federal court could acquire no jurisdiction on removal. A removal proceeding acknowledges the jurisdiction of the state court and simply removes the case to the federal court for trial because of a diversity of citizenship or because of the presence of a federal question where the amount in controversy is sufficient. If the state court had no jurisdiction, the federal court could acquire none, as its jurisdiction is derivative.

 The defendant's remedy, if any, on this question is to challenge the right of the state court to exercise any authority whatever over the territory which it is claimed is ruled by another sovereignty.

Other cases have been examined, but in those cases the operations of the national government itself were directly involved, and the court so stated. Such cases are not applicable here because the national government was performing no function when the alleged cause of action arose. It was not using its territory as an instrumentality of government. Particularly does this discussion apply to the case of Steele v. Halligan, D.C., 229 F. 1011, loc. cit. 1016, where the district judge said:

"The complaint avers that the defendant negligently put the plaintiff to work under guard, and the petition for removal alleges:

"'That the alleged accident and injury to plaintiff as described in his complaint occurred at the United States penitentiary within the limits of the same and on land and property used exclusively for a United States penitentiary and exclusively within the jurisdiction of the United States and of the United States courts.'

"The foregoing shows that the act of the defendant, on account of which he is sued, is one directly imposed on him in the course of carrying out the governmental purpose for which the land was purchased as a prison site."

The suit was against the warden of the penitentiary. While the court held that jurisdiction was exclusively in the federal court it was not explained how, by removal, the court acquired jurisdiction from another court that had no jurisdiction. It was inept language and the case was probably removable on other grounds than those stated by the court.

 In view of all the authorities as I interpret them, the state court not only had jurisdiction of this case, but it is entitled to exercise such jurisdiction for the reason that the case is not within the jurisdiction of the federal court.

Accordingly the motion to remand will be sustained. It is so ordered.